IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


OSCAR LEE NEWSOME,

        Plaintiff,                    CV F 02 5398 OWW WMW P

    vs.                           ORDER DISMISSING COMPLAINT
                                    WITH LEAVE TO AMEND

E. ALAMEIDA, et al.,

        Defendants.

_____/


        Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

        Plaintiff, an inmate in the custody of the California Department of Corrections at the California Men's Colony at San Luis Obispo,  brings this civil rights action against defendant correctional officials employed by the Department of Corrections at the California Correctional Institution at Tehachapi.  Plaintiff names the following individual defendants: E. Alameida, Director of the California Department of Corrections; P. Vazquez; Michael Yarborough; Jerry Van Ee; Dr. John Close; Dr. Thomas Vo; Dana Buchanan; Albert Quinones; Linda Haviland; R. Cortez; David Watson; T. Eilers; Doe defendants.    Plaintiff claims that he was subjected to inadequate medical care, such that it constituted cruel and unusual punishment within the meaning of the Eighth Amendment.    Plaintiff's factual allegations follow.

Plaintiff's claim is that defendants failed to act on his requests to be transferred to a facility that does not experience icy and snowy winters.  Plaintiff, an above the knee amputee, slipped and fell on the ice at CCI Tehachapi, injuring himself.   The first amended complaint on which this action proceeds consists of generalized and conclusory allegations as to defendant in general, as well as specific factual allegations as to certain individuals.  Plaintiff's specific factual allegations follow.

On November 6, 2001, plaintiff was seen by Dr. Vo.  Plaintiff asked Dr. Vo for a written chrono "explaining plaintiff's need to be housed in a warmer climate where it doesn't snow, prior to the snow beginning, for safety concerns."  Plaintiff explained that he lacks balance on slippery surfaces.  Dr. Vo refused to issue a recommendation.   Plaintiff then filed a request to update his Verification of Disability form to indicate his concerns for his safety.  Dr. Vo refused this request.   Dr. Vo told plaintiff that he would have to confer with Dr. Moore.  Plaintiff also filed a Reasonable Request for Accommodation form, requesting transfer to another facility.   This request "went unheard" for two months, and was denied on January 10, 2002.   During this same visit, plaintiff informed Dr. Vo that his prosthesis was in need of repair.  The motor caused the prosthesis to lock, causing difficulty in walking.  Dr. Vo examined the prosthesis and plaintiff's leg, and agreed that the prosthesis needed repair.  The repair was never completed.

On December 14, 2001, plaintiff slipped and fell on the icy surface of the Level II yard, injuring his back.  Plaintiff was diagnosed with a low back muscle strain.  On December 17, 2001, plaintiff was seen by Dr. Vo.

On December 18, 2001, plaintiff was interviewed regarding his request for transfer.  Plaintiff was interviewed by defendant Close, who advised plaintiff that he did not qualify for a transfer.  Plaintiff alleges that defendant Close "refused to consider plaintiff's special concerns and serious medical needs, even though he knew that the plaintiff had suffered a

2

recent injury while attempting to walk on ice."    Plaintiff does allege that defendant Close would "recall to clinic for evaluation" on January 16, 2002.   Close continued the date of January 29, 2002.   Defendant Close failed to appear for that evaluation.   The Unit Classification Committee did not timely forward the findings of the hearing.   Plaintiff alleges that this delay interfered with his rights to appeal the decision.    Defendant sent letters to defendant Warden Yarborough, Director of Corrections Alameida and  CCI Appeals Coordinator Haviland,.

On January 28, 2002, plaintiff injured his back.   Plaintiff does not specify how he injured his back on this date.   Plaintiff was transported to an outside hospital for treatment for head and back injuries.

On February 13, 2002, defendant Captain Quinones phoned plaintiff to speak with him about his appeal.   Plaintiff informed Quinones that Close had not met with him regarding his request.   The next day, Quinones met with plaintiff, and advised plaintiff that he would discuss plaintiff's request with Correctional Counselor Mitchell.

On February 21, 2002, plaintiff was re-classified and submitted for transfer.   On February 22 and 26, 2002, plaintiff received responses from defendants Van Ee, Yarborough, and Close.   Defendant Chief Medical Officer Close did evaluate plaintiff's request, and granted his request for transfer.  This request did not involve a physical examination.   On March 5, 2002, plaintiff's second level response was granted.  Plaintiff was submitted for transfer, "due to his apparent condition."

Plaintiff continued to seek repair of his prosthesis.  On March 13, 2002, plaintiff received a call from defendant Associate Warden Van Ee.   On the same day, plaintiff was called into the Unit II Sergeant's office and interviewed regarding his safety concern.  Plaintiff was told by defendant Sgt. Eilers " not to worry because the snow is over."

On March 14, 2002, it snowed.  Plaintiff was called back to Sgt. Eiler's office to sign the chrono.  Plaintiff does not indicate whether this was the chrono authorizing repair of his

1   prosthesis, or whether this chrono addressed plaintiff's concerns.  Plaintiff does allege that Eilers

2   "did nothing to ensure the safety of the plaintiff."  The next day, plaintiff was called to the

3   Sergeant's office to pick up legal mail.  It was snowing at the time.  Plaintiff requested to speak

4   with defendant Sgt. Cortez.  Plaintiff showed Cortez the chrono written by Eilers and spoke with

5   Cortez about his (plaintiff's) safety.   Plaintiff requested written permission from Cortez that

6   plaintiff would not be forced to walk on the ice.   The request was denied.

7          On March 18, 2002, plaintiff was due to trans-pack his property in preparation for

8   his transfer to another facility.   Plaintiff feared walking on the ice and asked Dorm Officer Hill

9   if there was something he could do.  Hill phoned defendant Sgt. Watson and "explained the

10  situation in detail to Sgt. Watson."  Watson instructed Hill to "make him walk."

11          Plaintiff attempted to walk to the morning meal with the aid of crutches.  Plaintiff

12  fell once again.   Plaintiff does not indicate what, if any, injury he suffered as a result of this fall.

13          The Eighth Amendment provides that "cruel and unusual punishment [shall not

14  be] inflicted."  "An Eighth Amendment claim that a prison official has deprived inmates of

15  humane conditions of confinement must meet two requirements, one objective and the other

16  subjective."  Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.) cert. denied, 514 U.S. 1065, (1995).

17          The objective requirement is met if the prison official's acts or omissions

18  deprived a prisoner of "the minimal civilized measure of life's necessities.'" Id. (quoting Farmer

19  v. Brennan, 511 U.S. 825, 834 (1994)).  To satisfy the subjective prong, a plaintiff must show

20  more than mere inadvertence or negligence.  Neither negligence nor gross negligence will

21  constitute deliberate indifference.  Farmer, 511 U.S. at 833, & n. 4; Estelle v. Gamble, 429 U.S.

22  97, 106 (1976).  The Farmer court concluded that "subjective recklessness as used in the

23  criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual

24  Punishments Clause" and adopted this as the test for deliberate indifference under the Eighth

25  Amendment.  Farmer, 511 U.S. at 839-40.

26

4

1        In order to hold a named defendant liable, plaintiff must allege facts as to each

2 defendant that indicates that defendant knew of a risk to plaintiff's health or safety, and acted in

3 disregard of that risk, causing injury to plaintiff.   Plaintiff alleges generally that defendants are

4 responsible for his injuries by ignoring his request for transfer.  Plaintiff's allegations, however,

5 indicate that defendants did grant plaintiff's request, though not as speedily as plaintiff would

6 have liked.

7        As to each of the defendants charged with specific conduce (with the exception of

8 defendant Watson), the facts alleged indicate that they took some steps to address plaintiff's

9 concerns.  That the steps may have been unreasonable, or even negligent, does not subject

10 defendants to liability under the Eighth Amendment.

11        <u>Dr. Vo</u>

12        Plaintiff alleges that Dr. Von denied his request for transfer.  Plaintiff also alleges,

13 however, that Dr. Vo told him that he would have to consult with another physician.   The facts

14 of the complaint indicate that Dr. Vo was following procedure.  Dr. Vo examined plaintiff, an

15 concurred that he needed a new prosthesis.  That it was not completed does not subject Dr. Vo to

16 liability.  There are no allegations that it was Dr. Vo's responsibility or obligation to repair the

17 prosthesis.

18        <u>Defendant Close</u>

19        The he initially denied plaintiff's request, he did, on review, grant plaintiff's

20 request for a transfer.  Plaintiff alleges that Close was, in part, responsible for a delay in

21 processing plaintiff's request.  Specifically, Close did not keep an appointment to review

22 plaintiff's request.   The facts alleged by plaintiff indicate that Close responded to plaintiff's

23 request, though not in a timely fashion.

24        <u>Sgt. Eilers</u>

25        As to Sgt. Eilers, the facts alleged indicate a response on Eiler's part to address

26

1   plaintiff's concerns.   The allegations of the complaint are unclear.  Plaintiff alleges that Eilers

2   "did nothing to ensure his safety," yet plaintiff alleges that Eilers authorized a chrono.  Plaintiff

3   does not indicate what the nature of this chrono was, or what it authorized.   In order to state a

4   claim as to defendant Eilers, plaintiff must allege facts that indicate he was deliberately

5   indifferent to plaintiff's safety.

6          Sgt. Watson

7          As to defendant Sgt. Watson, plaintiff has alleged facts which, if true, indicate

8   that Watson was aware of a dangerous condition, yet directed that plaintiff be made to walk on

9   the ice.  Plaintiff does not, however, indicate the extent of his injuries.  In a constitutional tort,

10  as in any other, a plaintiff must allege that the defendant's actions caused him some injury.  See

11  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977).   Moreover,

12  plaintiff has not alleged that he suffered emotional or physical harm as a result of defendants'

13  conduct.   The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined

14  in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in

15  custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

16         Sgt. Cortez

17         The only allegation as to Sgt. Cortez is that he refused to issue a note that plaintiff

18  not be forced to walk on the ice.  That allegation alone is insufficient to state a claim for relief.

19  There are no allegations that Cortez had the authority or opportunity to do anything else to

20  address plaintiff's concern and refused to, or that he was requested to do anything else.   A denial

21  to   write a note, of itself, is insufficient to state a claim for relief.

22         Supervisory Defendants

23         Plaintiff names as defendant Warden Yarborough, Appeals Coordinator Haviland,

24  Associate Warden Van Ee, Director of the California Department of Corrections Alameida.

25  Though plaintiff alleges that he wrote to these defendants, plaintiff must allege facts indicating

26

1    that they were personally aware of the risk to plaintiff, and that they personally acted with

2    deliberate indifference.  Plaintiff may not hold them liable based on their status as supervisors.  .

3    Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th

4    Cir. 1989).

5         As to the remaining defendants, plaintiff refers to defendants in general.   Section

6    1983 plainly requires that there be an actual connection or link between the actions of the

7    defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.

8    Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The

9    Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional

10   right, within the meaning of section 1983, if he does an affirmative act, participates in another's

11   affirmative acts or omits to perform an act which he is legally required to do that causes the

12   deprivation of which the complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

13   1978).

14        Because plaintiff has failed to allege facts sufficient to state a claim for relief, the

15   first amended complaint must be dismissed.   Plaintiff will, however, be granted leave to file an

16   amended complaint.   If plaintiff chooses to amend the complaint, plaintiff must demonstrate

17   how the conditions complained of have resulted in a deprivation of plaintiff's constitutional

18   rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in

19   specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C.

20   § 1983 unless there is some affirmative link or connection between a defendant's actions and the

21   claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167

22   (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

23        In addition, plaintiff is informed that the court cannot refer to a prior pleading in

24   order to make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an

25   amended complaint be complete in itself without reference to any prior pleading.  This is

26

7

because, as a  general rule, an amended complaint supersedes the original complaint.  See Loux

v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original

pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an

original complaint, each claim and the involvement of each defendant must be sufficiently

alleged.

      In accordance with the above, IT IS HEREBY ORDERED that:

      1.  Plaintiff's first amended complaint is dismissed; and

      2.  Plaintiff is granted thirty days from the date of service of this order to file a

second amended complaint that complies with the requirements of the Civil Rights Act, the

Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must

bear the docket number assigned this case and must be labeled "Second Amended Complaint";

plaintiff must file an original and two copies of the amended complaint; failure to file an

amended complaint in accordance with this order will result in a recommendation that this action

be dismissed.

      IT IS SO ORDERED.

**Dated:     April 21, 2005**          **/s/  William M. Wunderlich**
mmkd34                                  UNITED STATES MAGISTRATE JUDGE